IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

WILL NELSON CLARK,
              Defendant.

**INTERIM REPORT AND RECOMMENDATION**

08-CR-196(S)(M)

---

This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [30].[1] Before me is defendant's motion to suppress physical evidence and statements [18].[2] Oral argument was held on February 19 and March 17, 2009 [21, 28]. For the following reasons, I recommend that the motion to suppress physical evidence be GRANTED, and that my recommendation as to the motion to suppress statements be deferred pending my consideration of the government's response.

## BACKGROUND

"On June 12, 2008, Niagara Falls Police Officers, armed with a search warrant they obtained from Niagara Falls City Court Judge Angelo Morinello, entered the premises at 1015 Fairfield Avenue in Niagara Falls where they found the defendant, a substantial amount of what was later analyzed and found to be cocaine base (crack cocaine), approximately $1703 in

---

[1] Bracketed references are to CM-ECF docket entries.

[2] Although defendant's motion also sought other forms of relief, such as a bill of particulars, those requests were withdrawn at oral argument on February 19, 2009 [21].

cash, and a number of items of drug paraphernalia. The defendant was immediately arrested and . . . advised of his *Miranda* rights, after which, when asked if the crack was real, he nodded affirmatively and then asked (in sum and substance), 'what am I looking at, 25 or what?'" Government's Response [20], pp. 1-2.

Defendant is charged in a two-count indictment with possession (with intent to distribute) of a controlled substance, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A), and 844 [1]. The indictment "is based *entirely* on the results of the June 12 search (and the two statements the defendant made after being arrested and advised of his *Miranda* rights)". Government's Response [20], p. 2 (emphasis in original).

The search warrant, executed by Judge Morinello on June 10, 2008, was based upon an affidavit executed before him that same day by City of Niagara Falls Police Department Detectives Shawn Larrabee and James Reynolds (the warrant and supporting affidavit are attached to defendant's motion [18] as Exhibit A). The warrant authorized "an immediate search of the person known as WILL N. CLARK DOB 04/08/1965, a black male as well as said premises 1015 Fairfield Ave., being a multi-family dwelling . . . in the City of Niagara Falls, New York, and said search to include any and all persons present at this location during execution of said search warrant . . . FOR THE FOLLOWING PROPERTY: Cocaine and any other controlled substances as to find in Article 220 and 221 of the Revised Penal Laws of the State of New York", along with paraphernalia associated with those controlled substances.

The supporting affidavit stated that the "investigation was conducted with a confidential informant . . . *of unknown reliability*" (emphasis added), who stated "that there are illegal sales of cocaine taking place at 1015 Fairfield Ave., Niagara Falls, New

-2-

York . . . that there are drugs being sold at that address by a WILL N. CLARK . . . [and] that WILL N. CLARK . . . does have full control over 1015 Fairfield Avenue". The affidavit further stated that defendant "was observed during numerous surveillance to be entering and remaining and exercising control at the residence of 1015 Fairfield Ave.", and that the detectives arranged for the informant to make two controlled purchases from defendant of a substance which subsequently tested positive for the presence of cocaine.

The first purchase, "on a specific day in the month of May 2008", involved the informant "going directly to the area of 1015 Fairfield Ave., staying for a short period of time, and then returning directly back to" the detectives. The second purchase, also "on a specific day in the month of May 2008", involved the informant "going directly to the area of 1015 Fairfield Ave., entering the front porch area, staying for a short period of time, and then returning directly back to" the detectives.

## DISCUSSION AND ANALYSIS

A.  **Suppression of Physical Evidence**

In moving for suppression of the evidence seized during the search of the premises, defendant argues that he "was a lawful occupant of the residence with free access to come and go as he pleased. Accordingly, he had a reasonable expectation of privacy". Musitano Affidavit [18], ¶58. Although this statement was made by his attorney rather than by defendant himself, the government conceded his standing during oral argument on February 19 and March 17, 2009 [21, 28].

Defendant argues that the warrant is invalid for lack of probable cause, overbreadth, and staleness. Musitano Affidavit [18], ¶¶60-64; defendant's Memorandum of Law [26], pp.5-8. In deciding this motion, I recognize that "there is, of course, a presumption of validity with respect to the affidavit supporting [a] search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978). I also recognize that "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner", United States v. Ventresca, 380 U.S. 102, 109 (1965), and that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants". Id.

However, this is not a "doubtful or marginal" case. While "a magistrate's determination of probable cause should be paid great deference by reviewing courts", Spinelli v. United States, 393 U.S. 410, 419 (1969), "deference to the magistrate . . . is not boundless". United States v. Leon, 468 U.S. 897, 914 (1984). "Reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a *substantial basis* for determining the existence of probable cause." Id. at 915 (emphasis added). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Illinois v.Gates, 462 U.S. 213, 239 (1983).

"In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." Id. In performing that review, my inquiry must focus only upon the facts as disclosed in the affidavit - not as they may have actually existed. "All data necessary to show probable

cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." United States v. Falso, 544 F. 3d 110, 122 (2d Cir. 2008).

The government concedes that "the warrant affidavit submitted to Judge Morinello was perhaps not the 'model' this Court is used to seeing from the United States Attorney's office" (government's Memorandum [25], p. 3). In fact, the government's initial response to defendant's motion did not even attempt to defend the validity of the affidavit or the search warrant - instead, it argued only that "the good faith exception of United States v. Leon . . . applies". Government's Response [20], p. 9. However, Leon's "good faith" analysis presupposes "reliance on a subsequently *invalidated* search warrant". 468 U.S. at 922 (emphasis added).

In Leon, the Court held that evidence seized pursuant to an improper search warrant need not be suppressed "when an officer acting with objective good faith has obtained [the] warrant from a judge or magistrate and acted within its scope". 468 U.S. at 920. The government argues that "before the defendant can get around Leon, he must first establish that the police had no reasonable basis for believing the warrant was valid". Government's Response, [20], pp. 9-10. However, that is not defendant's burden - "the burden is on the *government* to demonstrate the objective reasonableness of the officers' good faith reliance" upon the warrant. United States v. George, 975 F. 2d 72, 77 (2d Cir. 1992) (emphasis added); Leon, supra, 468 U.S. at 924 ("the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time").

In determining whether the "good faith" exception applies, the court must "eschew inquiries into the *subjective* beliefs of law enforcement officers who seize evidence

pursuant to a subsequently invalidated warrant", Leon, supra, 468 U.S. at 922, n. 23, and insist that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues . . . be *objectively* reasonable". Id. at 922-23 (emphasis added). "Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the standard of reasonableness . . . is an objective one . . . that requires officers to have a reasonable knowledge of what the law prohibits." United States v. George 975 F. 2d 72, 77 (2d Cir. 1992). Thus, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization". Leon, supra, 468 U.S. at 922, n. 23.

The Court in Leon further recognized that "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued", in which case "suppression therefore remains an appropriate remedy": (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) if "the issuing magistrate wholly abandoned his judicial role"; (3) if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) if the warrant "is so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." Id. at 922-23. While there is no indication that Judge Morinello was misled by false information in the affidavit

presented to him, consideration of factors (2), (3) and (4), supra, leads me to conclude that suppression of the evidence seized during the search is warranted.

In the first place, the fact that both the supporting affidavit and the warrant itself describe the premises to be searched as a "multi family dwelling" should have raised a red flag as to the need to show probable cause to search *each unit* of the premises. "The scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Maryland v. Garrison, 480 U.S. 79, 84 (1987). "Clearly, if it is apparent that the premises to be searched is a multiple-family or multi-unit building, then the officers must precisely identify the particular areas of the building that they intend to search . . . . Absent probable cause to search the entire premises, the warrant would be too broad to satisfy the particularity requirement if the unit to be searched is not specified." United States v. Maneti, 781 F. Supp. 169, 179 (W.D.N.Y. 1991) (Larimer, J.); United States v. Franjoine, 1988 WL 95766, *3 (W.D.N.Y. 1988) (Elfvin, J.) ("the law is settled that where a structure is divided into distinctly separate units, probable cause must be shown for each unit searched").

For example, in United States v. Bermudez, 526 F. 2d 89, 96-97 (2d Cir. 1975), cert. denied, 425 U.S. 970 (1976), the court suppressed evidence seized in the search of a clothing store which was a part of a building containing apartments:

> "The description '293 Clothing Corporation, 293 Grand Street' did not, with sufficient specificity, distinguish the clothing store and basement, where the search was actually conducted, from the two floors of apartments located above the clothing store. Since the warrant could have permitted a search of the entire building, and there was probable cause for search of the bottom floors only, the warrant was defective due to overbreadth and the materials seized were properly suppressed."

*See also* United States v. White, 416 F.3d 634, 637 (7th Cir. 2005), cert. denied, 546 U.S. 1197 (2006) ("when a search involves a building with multiple, separate units, the warrant must specify the precise unit that is the subject of the search to satisfy the particularity requirement"); People v. Fulton, 49 A.D. 3d 1223, 1223 (4th Dept. 2008) ("generally, a warrant to search a subunit of a multiple occupancy structure is void if it fails to describe the subunit to be searched and only describes the larger structure").[3]

The government attempts to justify the failure to particularize which portions of the "multi family dwelling" could legitimately be searched by noting that "the informant . . . had told the officers . . . that the defendant had *full control* over the premises." Government's Memorandum [25], p. 3 (emphasis added). However, some corroboration of this conclusory statement was necessary, particularly since the informant was "of unknown reliability". Although "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion", Ventresca, supra, 380 U.S. at 108, "this is not to say that probable cause can be made out by affidavits which are purely conclusory . . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." Id. at 108-09.

In an attempt to corroborate the informant's statement as to "full control", the detectives aver that "the subject WILL N. CLARK . . . was observed during numerous

---

[3] Although there are some exceptions to this rule, *see, e.g.*, United States v. Parmenter, 531 F. Supp. 975, 979 (D. Mass. 1982), none of those exceptions are applicable in this case.

surveillance to be entering and remaining and exercising control at the residence". However, that "surveillance" is no less conclusory than the informant's statement. The affidavit contains no indication of when, or from where, or by whom the surveillance was conducted, or of what defendant did (other than "entering and remaining") to lead to the conclusion that he exercised "full control" over what was concededly a multi-family dwelling.[4]

"We do not [agree] that whenever a surveillance is conducted, it will ipso facto serve to corroborate the otherwise insufficient hearsay conclusions of an informant regardless of how indefinite or unsound the surveillance may be. We believe that . . . the facts disclosed by a surveillance and presented to the magistrate must be independently analyzed by him in order that he can determine whether, standing alone, or when considered with hearsay information in the affidavit, they support a finding of probable cause." United States ex rel. Rogers v. Warden of Attica State Prison, 381 F. 2d 209, 219 (2d Cir. 1967). "If [Detective] Gowski merely saw the unknown males and known addicts entering the building where Rogers lived, but did not see them going into his apartment, *it is quite clear that his observation would not have provided probable cause for the issuance of a warrant.* Certainly, it could not be argued that the police

---

[4] *Compare with* United States v. Gonzalez, 697 F. 2d 155, 156 (6th Cir. 1983) (in which supporting affidavit contained detailed reasons "establishing probable cause to believe that, notwithstanding the divisions in the structure, the defendants' 'going back and forth' put them in control of the whole building as if it were a single unit").

could obtain search warrants for every apartment in a building merely because they had seen addicts going in and out of the building." Id. (emphasis added).[5]

The government argues that "in reviewing this conclusion by Judge Morinello (that defendant exercised "full control" over the entire premises), this Court must . . . do so only by looking at Judge Morinello's conclusion through the 'great deference' microscope". Government's Memorandum [25], pp. 8-9. Nevertheless, "having accorded great deference to the magistrate's finding of probable cause, it remains for the reviewing court to decide whether the magistrate performed his neutral and detached function on the facts before him, and did not merely serve as a rubber stamp for conclusions drawn by the police." United States v. Travisano 724 F. 2d 341, 345 (2d Cir. 1983). In the absence of corroborating details in the affidavit, I conclude that Judge Morinello's signing of the warrant did not fulfill the "neutral and detached function" required of him (Travisano, supra), but was instead "a mere ratification of the bare conclusions of others". Gates, supra, 462 U.S. at 239.[6]

As a fallback position, the government argues that even if the warrant for search of the entire premises is unsustainable, "the warrant *specifically authorized* 'an immediate search of the person [of defendant]'". Government's Memorandum [25], p. 7. However, "a search or

---

[5] The fact that "no one other than the defendant was in fact on the premises (and by extension searched)", government's Memorandum [25], p. 8, is irrelevant to my determination. "Even if it had turned out after the search that persons named in the affidavit were the only residents of the building and that no innocent persons had actually suffered an unjustified search, the warrant would still be invalid." Parmenter, supra, 531 F. Supp. at 979; United States v. Hinton, 219 F. 2d 324, 326 (7th Cir. 1955).

[6] There are numerous other deficiencies in the warrant as well. For example, it authorizes the search of "any and all persons present at this location" without a showing of probable cause as to any of them, and also authorizes the search not only for cocaine (the only drug specifically mentioned in the supporting affidavit), but also for "any other controlled substances".

seizure of a person must be supported by probable cause *particularized with respect to that person*. This requirement cannot be . . . avoided by simply pointing to the fact that coincidentally there exists probable cause to . . . search the premises where the person may happen to be." Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (emphasis added). "The determination of probable cause in a search warrant is whether probable cause exists that evidence of a crime is located in a particular place at a particular time. The passing of time can significantly impact that situation." McNamara v. Handler, 2008 WL 52444648, *3 (N.D. Ill. 2008).

While the affidavit refers to two alleged sales of cocaine by defendant on unspecified dates in May 2008, it offers no showing that evidence of a crime was likely to be found *on defendant's person* as of the date of the warrant (June 10, 2008). In fact, the affidavit specifically refers to "past personal experience of [the detectives] that cocaine, and other controlled substances *may be easily and quickly destroyed or disposed of*" (emphasis added). Therefore, I conclude that the warrant lacked probable cause to support a search of defendant's person.[7]

Finally, the government argues that "the defendant was arrested as a result of being found with the crack cocaine and he was searched incident to the arrest. Thus even if the warrant . . . troubles the Court, the inevitable discovery doctrine operates to validate the search". Government's Memorandum [25], p. 8. "The doctrine of inevitable discovery, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can establish by a preponderance of the evidence that the information ultimately or

---

[7] This conclusion is bolstered by the fact that the government does not respond to defendant's argument regarding staleness (Musitano Affidavit [18], ¶64).

inevitably would have been discovered by lawful means." United States v. Eng, 971 F. 2d 854, 859 (2d Cir. 1992). Application of the doctrine "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment". Nix v. Williams, 467 U.S. 431, 444 n. 5 (1984).

The government's "inevitable discovery" argument appears to be that the improperly obtained evidence justified defendant's arrest - which, in turn, would have justified a search for the evidence which led to his arrest. That argument places the cart before the horse. I may not conclude "that the search was constitutional because its fruits justified the arrest that followed". Smith v. Ohio, 494 U.S. 541, 543 (1990) ("that reasoning, however, justifying the arrest by the search and at the same time . . . the search by the arrest, just will not do"). *See also* Garrison, supra, 480 U.S. at 85 ("discovery of contraband cannot validate a warrant invalid when issued").

In any event, the cocaine was *not* located within the proper scope of a search incident to arrest, which is limited to "a search of the arrestee's person and the area 'within his immediate control' - construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence". Chimel v. California, 395 U.S. 752, 763 (1969). Instead, it was found "inside a plastic Qtips container, inside nightstand middle bedroom" (Court Ex. 1, Item 4); inside a "clear sandwich baggy under nightstand in middle bedroom" (id, Item 5); inside a "clear baggy . . . hall closet in black sock" (id., Item 8); and "in [a] black sock above heat duct north side of basement" (id., Item 9). (A copy of Court Ex. 1 is annexed hereto).

Mindful of "the need to prevent the inevitable discovery exception from swallowing the exclusionary rule", Eng, supra, 971 F. 2d at 860, I conclude that the government has failed to prove that the improperly seized evidence would "inevitably" have been discovered by proper means. Therefore, I recommend that the evidence obtained during the search of 1015 Fairfield Avenue on June 12, 2008 (and inventoried on Court Ex. 1) be suppressed.

**B.     Suppression of Statements**

In his initial motion to suppress, defendant argued only that his oral statements should be suppressed because they were made before he was given his Miranda warnings. Musitano Affidavit [18], ¶¶ 65-66. However, at oral argument on February 19, 2009, Mr. Musitano stated that he also wished to advance an argument which he had inadvertently omitted from his papers, namely that the statements should be suppressed as the "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471 (1963). He repeated that argument in his supplemental brief ([26], p. 14) and at the second oral argument on March 17, 2009, and the government did not object to the argument being belatedly raised.

Although I normally will not entertain arguments which have not been raised in the initial motion papers, I have the "discretion to consider the issue, even though it was raised for the first time at oral argument". United States v. Barnes, 158 F. 3d 668, 673 (2d Cir. 1998). That is particularly true where - as here - the argument is one which the government might well have expected the defendant to make.

In determining whether statements obtained following an illegal search should be suppressed, the issue is "whether, granting establishment of the primary illegality, the evidence to which . . . objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint". Wong Sun, supra, 371 U.S. at 488. While defendant no longer disputes the receipt of his Miranda warnings prior to giving a statement to the police, it has long been recognized that "Miranda warnings, and the exclusion of a confession made without them, do not alone sufficiently deter a Fourth Amendment violation". Brown v. Illinois, 422 U.S. 590, 601 (1975).

"The Miranda warnings are an important factor, to be sure . . . . But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant . . . . And *the burden of showing admissibility rests, of course, on the prosecution.*" Id. (emphasis added).

Because the "fruit of the poisonous tree" argument was not initially raised by the defendant, fairness requires that the government be given the opportunity to respond. Accordingly, on or before April 24, 2009 the government may file a supplemental brief and/or affidavits addressing the admissibility of defendant's statements. My decision will follow thereafter.

## CONCLUSION

For these reasons, I recommend that defendant's motion (Dkt. #18) be GRANTED to the extent that it seeks to suppress physical evidence. My Report and

Recommendation as to defendant's motion to suppress statements will follow my receipt and consideration of the government's response to defendant's "fruit of the poisonous tree" argument. The time for filing objections to this Report and Recommendation, as well as to the Report and Recommendation as to suppression of statements, will begin to run once the latter Report and Recommendation has been filed.

**SO ORDERED.**

DATED: April 14, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

# NIAGARA FALLS POLICE DEPARTMENT
## SEARCH AND SEIZURE INVENTORY

Subject: WILL N. CLARK            CR# 08-25175
Address: 1015 FAIRFIELD AVE

| Item # | Description/Location of Items |
|---|---|
| 1 | 1-WHITE OVAL PILL ENGRAVED W/ U.S. 10 ON ONE SIDE FOUND IN FRONT BEDROOM - LARRABEE - |
| 2 | GLASS DISH W/ RAZOR BLADE AND WHITE RESIDUE FOUND ON TOP OF REFRIGERATOR IN KITCHEN - GIAQUINTO - |
| 3 | DIGITAL SCALE W/ OFF WHITE RESIDUE KITCHEN CUPBOARD - GIAQUINTO - |
| 4 | CHUNK OF OFF WHITE SUBSTANCE (SUSPECTED CRACK) INSIDE A PLASTIC Q TIPS CONTAINER, INSIDE NIGHTSTAND MIDDLE BEDROOM - RODRIGUEZ - |
| 5 | CLEAR SANDWICH BAGGY W/ QUANTITY OF AN OFF WHITE CHUNK LIKE SUBSTANCE (SUSPECTED CRACK), UNDER NIGHTSTAND IN MIDDLE BEDROOM. - RODRIGUEZ - |
| 6 | $1,027.00 U.S. CURRENCY MIDDLE BEDROOM - RODRIGUEZ - |
| 7 | $676.00 U.S. CURRENCY PERSON OF WILL CLARK - LT RIZZO - |
|  | * $1,703.00 TOTAL CASH * |
| 8 | CLEAR BAGGY W/ A QUANTITY OF AN OFF WHITE CHUNK SUBSTANCE HALL CLOSET IN BLACK SOCK. - GIAQUINTO - |
| 9 | QUANTITY OF AN OFF WHITE CHUNK LIKE SUBSTANCE IN BLACK SOCK ABOVE HEAT DUCT NORTH SIDE OF BASEMENT - RODRIGUEZ - |

I hereby attest to the fact that the above list is in fact an accurate accounting of the items removed by the police.

Signed: REFUSED         Date: 6-12-08

I, DET. JAMES REYNOLDS, the police officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant per N.Y. C.P.L. 609.50 sub. 4.

Signed: [signature]         Date: 6/12/08

Sworn to and subscribed before me
This 12th day of June 2008

[signature]
Commissioner of Deeds
Notary Public

**COURT EXHIBIT**
1
3/17/09